IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUSTIN CARTER, | : | |
|     Petitioner, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| TABB BICKELL, et al., | : | NO. 13-cv-7293 |
|     Respondents. | : | |

**REPORT AND RECOMMENDATION**

**MARILYN HEFFLEY, U.S.M.J.**                                                                 November 25, 2014

      This is a pro se petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by Justin Carter ("Petitioner" or "Carter"), a prisoner incarcerated at the State Correctional Institution in Huntingdon, Pennsylvania.  For the reasons that follow, I recommend that the petition be denied.

**I.**       **FACTS AND PROCEDURAL HISTORY**

      On September 21, 2007, following a jury trial before the Honorable Alan M. Black of the Lehigh County Court of Common Pleas, Carter was convicted of third degree murder.  The conviction arose from the stabbing death of Gregory Leon Benton on January 12, 2007, during an altercation which occurred outside a bar in Allentown, Pennsylvania.  On November 28, 2007, Carter was sentenced to a prison term of 20 to 40 years.  Carter did not appeal the sentence.

      On May 20, 2008, Carter filed a petition pursuant to Pennsylvania's Post Conviction Relief Act, 42 Pa. Cons. Stat. § 9545 et seq. ("PCRA").  Counsel was appointed and an amended petition was filed raising several claims of ineffective assistance of trial counsel, including a claim that trial counsel was ineffective for failing to file a direct appeal.  After conducting an evidentiary hearing, the PCRA court granted Carter's petition in part, reinstating his right to file a direct appeal nunc pro tunc.

Petitioner filed his nunc pro tunc appeal and on June 8, 2009, the Pennsylvania Superior Court affirmed the judgment of sentence.  Thereafter, Carter filed a petition for allowance of appeal, which was denied by the Pennsylvania Supreme Court on October 22, 2009.  Petitioner did not pursue a writ of certiorari in the United States Supreme Court.  Accordingly, the judgment of sentence became final on January 20, 2010, when the 90-day period for seeking such review expired.

On October 18, 2010, Carter filed a second PCRA petition, which the court treated as a timely first petition because his appellate rights had been reinstated.  Counsel was appointed to represent Carter and an amended PCRA petition was filed on his behalf.  Following an evidentiary hearing, Judge Black denied Carter's PCRA petition on November 22, 2011 and no appeal was taken.  However, on February 16, 2012, Carter filed a petition seeking permission to file an appeal nunc pro tunc.  On June 4, 2012, the PCRA court granted Carter's petition and reinstated his right to appeal the denial of his PCRA petition nunc pro tunc.  Carter filed an appeal and on September 10, 2013, the Superior Court affirmed the order denying Carter's PCRA petition.

On September 19, 2013, Carter filed a third PCRA petition.  On October 14, 2013, the Honorable William E. Ford issued a notice of intent to dismiss the petition without a hearing, finding that it was untimely.  Petitioner filed a response to the notice of intent, but on November 19, 2013, the PCRA court dismissed the petition as untimely.  See Doc. No. 1, Ex. 1 at 17.[1]  On January 17, 2014, Carter filed an appeal of the denial of his PCRA petition with the Pennsylvania Superior Court.   On June 17, 2014, the Pennsylvania Superior Court affirmed the denial of Carter's PCRA petition as untimely.  Carter subsequently filed a petition for allowance of appeal

---

[1]  Pages from the Petitioner's and Respondents' filings cited herein will refer to ECF pagination.

with the Pennsylvania Supreme Court, which remains pending.

The present federal habeas petition, which includes a request for stay and abeyance, was filed on November 25, 2013, approximately a month and one-half before Carter appealed the denial of his most recently filed PCRA petition to the Superior Court.[2] Doc. No. 2. In his petition, Carter raises the following claims in support of his request for habeas relief: (1) the trial court gave an erroneous, misleading jury instruction; (2) the Commonwealth failed to meet its burden of proving the elements of third degree murder; (3) his trial counsel failed to object to the erroneous, misleading jury instruction; and (4) his direct appeal counsel was ineffective for failing to inform him that the jury instruction was wrong and misleading. Further, in subsequent amendments to his habeas petition, Carter argues that he is "statutorily innocent."[3]

Respondents filed a response requesting that Carter's habeas petition be denied or in the alternative, that his request for a stay and abeyance be granted during the pendency of his state collateral review. Doc. No. 8. At the direction of this court, the Respondents filed a supplemental response on July 29, 2014, addressing Carter's procedural default argument.

---

[2] The petition was docketed on December 12, 2013. Carter, however, signed the petition on November 25, 2013 and made a handwritten notation that it was re-submitted to prison authorities on December 7, 2013 due to an error. Consequently, this court will apply the "prisoner mailbox rule" and use the date that Carter alleges it was given to prison officials for mailing as the date of filing. See Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998).

[3] As acknowledged in this court's October 16, 2014 order, Carter's habeas petition was timely filed. In March 2014, after the federal limitations period had lapsed, Carter filed amendments to the petition. In April 2014, Carter filed a motion to amend his petition seeking to assert new claims and amend the issues contained in his original petition. Doc. Nos. 5, 9. Carter also filed amendments to his petition in August 2014. Doc. No. 15. This court granted Carter's motion to amend, noting that it would consider the arguments set forth in his amended pleadings, but that to the extent new claims were being asserted, such claims were time-barred. See United States v. Duffus, 174 F.3d 333, 338 (3d Cir. 1999); Doc. No. 17. On November 5, 2014, Carter filed additional amendments in which he requests that this court reconsider its October 16, 2014 order to allow the assertion of new claims. Doc. No. 18. Carter's most recently filed amendments, however, restate the same arguments relating to his challenge to the jury instruction on third degree murder, which is addressed, infra, in this Report and Recommendation

Doc. No. 13. Thereafter, Petitioner filed a reply to the Respondents' supplemental response. Doc. No. 14.

## II. DISCUSSION

### A. Carter's Petition for Stay and Abeyance

Absent unusual circumstances, the federal courts will not consider the merits of a habeas corpus petition unless the petitioner has complied with the exhaustion requirement of 28 U.S.C. § 2254(b)(1)(A). Exhaustion mandates that the state courts be given a full and fair opportunity to address the petitioner's claims. See Edwards v. Carpenter, 529 U.S. 446, 451 (2000) (citing Murray v. Carrier, 477 U.S. 478, 488-89 (1986)). This means "that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). To exhaust a claim for relief, "[a] state prisoner must 'fairly present' all federal claims to the highest state court." Whitney v. Horn, 280 F.3d 240, 250 (3d Cir. 2002).[4] The exhaustion requirement is not a mere formality, but is based on rules of comity between state and federal courts. O'Sullivan, 526 U.S. at 844.

In the instant matter, Carter acknowledges that his claims are not exhausted. When an avenue remains for a petitioner to exhaust his or her claims in state court, a habeas petition would ordinarily be dismissed without prejudice to allow the petitioner to exhaust the claims before returning to federal court. Lines v. Larkins, 208 F.3d 153, 159-60 (3d Cir. 2000). However, in Rhines v. Weber, 544 U.S. 269 (2005), the United States Supreme Court held that a

---

[4] On May 9, 2000, the Pennsylvania Supreme Court issued Order No. 218, which declares that federal habeas petitioners are no longer required to appeal to the Pennsylvania Supreme Court in order to exhaust their claims in state court. The United States Court of Appeals for the Third Circuit has recognized the validity of Order No. 218. Lambert v. Blackwell, 387 F.3d 210, 233-34 (3d Cir. 1992). Accordingly, an appeal to the Pennsylvania Superior Court, without seeking allocator, is sufficient to exhaust state court remedies. Id.

stay and abeyance may issue in limited circumstances where the district court determines there was good cause for a petitioner's failure to exhaust claims first in state court and where the claims are not plainly meritless. Id. at 275. The Court noted that if a district court dismisses a habeas petition near the end of the one-year statute of limitations period, a petitioner's chances of being able to file in state court and return to federal court within the limitations period are slim. Id.

Carter's conviction became final on January 20, 2010, 90 days after the Pennsylvania Supreme Court denied his petition for allowance of appeal. See Kapral v. United States, 166 F.3d 565, 575 (3d Cir. 1999) (judgment becomes final at the conclusion of direct review or the expiration of time for filing such review, including the time for filing a petition for writ of certiorari in the United States Supreme Court). This was after he filed his first PCRA petition and was granted permission to file a direct appeal nunc pro tunc. Petitioner's time for filing a PCRA petition expired one year from that date or on January 20, 2011. He waited 271 days to file a timely PCRA petition on October 18, 2010, which was denied following an evidentiary hearing before Judge Black. The Pennsylvania Superior Court affirmed the denial of that petition on September 10, 2013. Carter's federal limitations period remained tolled while his properly filed petition remained pending until October 10, 2013, when his time for petitioning the Pennsylvania Supreme Court for review expired. See 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection"). Consequently, Petitioner had 94 days remaining in his federal limitations period, or until January 12, 2014, to file a federal petition for writ of habeas corpus.

On September 19, 2013, Carter filed a third PCRA petition, which as previously stated, is on appeal before the Pennsylvania Supreme Court. If this petition had been properly filed, it would have further tolled the federal limitations period. However, given that the PCRA deadline had expired on January 20, 2011, the petition was untimely. 42 Pa. C.S. § 9545(b).

Thus, Carter's third PCRA petition did not act to toll the federal limitations period. See Merritt v. Blaine, 326 F.3d 157, 165-66 (3d Cir. 2003) (if a petitioner files an out-of-time application and the state court dismisses it as time-barred, then it is not deemed to be a "properly-filed application" for tolling purposes). Carter had until January 12, 2014 to file a federal habeas petition. He filed the instant petition on December 12, 2013 and sought a stay and abeyance to allow him to pursue his most recently filed PCRA petition. Pursuant to Rhines v. Weber, a stay and abeyance is only available in limited circumstances where the court determines there was good cause for the petitioner's failure to exhaust his or her claims first in state court and where the claims are not plainly meritless. Rhines, 544 U.S. at 277.

In the case at bar, Petitioner cannot satisfy any of the requirements that would entitle him to a stay and abeyance. Initially, Carter did not acknowledge that his pending PCRA petition was untimely. It was only after the PCRA court issued its notice of intent to dismiss the petition as untimely that Carter filed an amended petition explaining his reasons for invoking 42 Pa. C.S. § 9545(b)(1)(ii). Specifically, Carter contends that "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence." Doc. No. at 7. Carter further alleges that he "did not know that an unpremeditated intent to kill can't apply to third degree murder, even after reading the statute itself." Id. He claims that he exercised due diligence in the law library, but believed that intent was an element of third degree murder. Id.

6

I agree with the state court determination that Carter failed to demonstrate that an exception to § 9545 is warranted and that his PCRA petition is untimely. Carter simply has not alleged any new facts or any newly recognized right which would justify an exception under § 9545. Additionally, his misunderstanding of the law or inadequate legal research does not constitute an extraordinary circumstance which would permit equitable tolling in federal court. Fahy v. Horn, 240 F.3d 239, 244 (3d Cir. 2001) ("[i]n non-capital cases, attorney error, miscalculation, inadequate research or other mistakes have not been found to rise to the 'extraordinary circumstances' required for equitable tolling").

Thus, because Petitioner cannot establish good cause for failing to exhaust his claims in state court and given that his claims wholly lack merit, a stay and abeyance is not warranted in this case. See Rhines, 544 U.S. at 275.

### B. Procedural Default

The procedural default barrier, in the context of habeas corpus, precludes federal courts from reviewing a state petitioner's habeas claims if the state court decision is based on a violation of state procedural law that is independent of the federal question and is adequate to support the judgment. Coleman v. Thompson, 501 U.S. 722, 729 (1991). "If [a] petitioner failed to exhaust state remedies and the court to which petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred . . . there is procedural default for the purpose of federal habeas . . ." Coleman, 501 U.S. at 735 n.1; McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999).

Here, there can be no doubt that Carter's claims are procedurally defaulted. Therefore, this court need not delay in finding that Carter's claims are procedurally defaulted while his petition for allowance of appeal with regard to his third PCRA petition remains pending before

7

the Pennsylvania Supreme Court. See Banks v. Horn, No. 99-438, 1999 WL 288531, at *4-5 (M.D. Pa. May 7, 1999); Whitney v. Horn, 280 F.3d 240, 251 (3d Cir. 2002) (recognizing that the PCRA one-year limitation period is a jurisdictional rule that precludes consideration of the merits of any untimely PCRA petition, and it is strictly enforced in all cases, even including death penalty cases). The PCRA's statute of limitations provides that any PCRA petition "including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final." 42 Pa. Cons. Stat. § 9545(b)(1). Pennsylvania courts have consistently applied this rule, which is an independent and adequate state ground for denying habeas relief. See Banks v. Horn, No. 99-438, 1999 WL 288531, at *4-5. Carter's third PCRA petition was filed well after the PCRA one-year limitation period lapsed and he failed to meet any of the exceptions set forth in § 9545(b)(1). Thus, Carter's claims were untimely presented in state court, rendering them procedurally defaulted. McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999).

In order to survive procedural default in this case, Carter must establish that failure to consider his claims will result in a fundamental miscarriage of justice or demonstrate cause for the default and actual prejudice as a result of an alleged violation of federal law. Coleman, 501 U.S. at 750.

    **1. Miscarriage of Justice**

To establish the fundamental miscarriage of justice exception, a petitioner must demonstrate his or her "actual innocence." Schlup v. Delo, 513 U.S. 298, 324 (1995); Calderon v. Thompson, 523 U.S. 558, 559 (1998). "'To be credible' a claim of actual innocence must be based on reliable evidence not presented at trial." Id.

As a threshold matter, Carter has failed to present any new or reliable evidence to demonstrate that he is actually innocent. In fact, Carter has not even alleged actual innocence. Instead, Carter argues that he is "statutorily innocent" and maintains that the evidence supports a finding of intent to kill, which he claims is inconsistent with the verdict of third degree murder.[5] As discussed more fully below, this contention plainly lacks merit.

### 2. Cause and Prejudice

A showing of cause demands that a petitioner establish that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Coleman, 501 U.S. at 753. Once cause is proven, a petitioner must also demonstrate that prejudice resulted from trial errors that "worked to [petitioner's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Murray v. Carrier, 477 U.S. 478, 494 (1986).

Petitioner's sole argument with respect to his procedural default is that his PCRA counsel's ineffective assistance should excuse the default pursuant to Martinez v. Ryan, 132 S. Ct. 1309 (2012). In the alternative to granting a stay, Carter requests that this court excuse the procedural default pursuant to Martinez because of his PCRA counsel's failure to include the following claims in his PCRA petition: (1) the trial court gave an erroneous, misleading jury instruction; (2) the Commonwealth failed to meet its burden of proving the elements of third degree murder; (3) his trial counsel failed to object to the erroneous, misleading jury instruction; (4) his direct appeal counsel was ineffective for failing to inform him that the jury instruction was wrong and misleading; and (5) he is "statutorily innocent" and could not have been found guilty of third degree murder because the evidence supported a finding of an intentional killing

---

[5] Petitioner appears to argue that the evidence at trial supported a conviction of first or second degree murder as opposed to third degree murder.

and third degree murder is not criminal homicide and, therefore, falls outside the crime for which he was charged.

In <u>Martinez v. Ryan</u>, the United States Supreme Court recognized an exception to the general rule set forth in <u>Coleman</u> that an attorney's negligence in a post-conviction proceeding does not establish cause to excuse procedural default. The Supreme Court held that "where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." <u>Id.</u> at 1320.

In order to overcome procedural default under <u>Martinez</u>, a petitioner must demonstrate that his collateral review counsel was ineffective pursuant to the standard set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984) and "must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the petitioner must demonstrate that the claim has some merit." <u>Martinez</u>, 132 S. Ct. at 1318.

Although Carter contends that his PCRA counsel was ineffective for failing to raise his claims, this alleged ineffectiveness cannot serve as a basis to excuse the procedural default. The holding in <u>Martinez</u> is limited to ineffective assistance of counsel at initial review collateral proceedings where the claim of trial counsel ineffectiveness could not have been presented sooner. <u>Id.</u> at 1320. Most of Carter's claims do not allege counsel ineffectiveness. In addition, Petitioner was represented by different counsel on appeal. Thus, for purposes of assessing when Petitioner was able to first raise his ineffectiveness claims, I conclude that Petitioner could have raised the claims on direct appeal and did not have to wait until collateral review. In fact, all of Carter's claims, with the exception of his ineffective assistance of appellate counsel claim, could

have been raised on direct appeal.  Finally, all of Petitioner's claims plainly lack merit.

### a. Carter's Underlying Claim of Ineffective Assistance of Counsel for Failing to Object to Jury Instruction

In Strickland v. Washington, the United States Supreme Court set forth a two-prong test by which claims alleging counsel's ineffectiveness are reviewed.  Strickland, 466 at 687.  First, the petitioner must demonstrate that his trial counsel's performance fell below an "objective standard of reasonableness."  Id. at 688.  The court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  Id. at 690.  Because of the difficulties in making a fair assessment, eliminating the "distorting effect" of hindsight, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).  It is well-established that counsel cannot be ineffective for failing to raise a meritless claim.  Strickland, 466 U.S. at 691; Holland v. Horn, 150 F. Supp. 2d 706, 730 (E.D. Pa. 2001).  Pursuant to the second prong of the Strickland analysis, a defendant must also establish that the deficient performance prejudiced the defense.  This showing requires a demonstration that counsel's errors were so serious as to deprive the defendant of a fair trial or a trial whose result is reliable.  Strickland, 466 U.S. at 687.  More specifically, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.

Here, Carter's underlying claims of ineffective assistance of trial counsel or direct appeal counsel are meritless.  First, Petitioner alleges that the second jury charge, which was requested

by the jury to clarify the definitions of the offenses after deliberations had begun, allowed "the jury to conclude that an intent to kill that differs from first degree murder, such as without deliberation or premeditation, can and does constitute third degree murder." Doc. No. 1-1 at 4. As stated by Petitioner:

> The evidence presented to the jury strongly indicates an intent to kill, with and without premeditation. *The victim was stabbed once through the heart, neck and stomach and two of those crimes contain an intent to kill, coupled with the evidence presented, highly suggests that the jury was thinking intentional killing.*

Id. at 5. (emphasis added).

Carter maintains that because the prosecutor argued it was a "second degree murder that escalated into a first degree murder," there was no evidence to support a conviction of third degree murder. Doc. No. 14 at 3. He further contends that "[b]ecause attempted robbery and intent to kill cannot apply to third degree murder, no evidence was presented to support the verdict." Id. In essence, Carter claims that the jury was improperly led to believe that an intentional killing, without premeditation, was third degree murder.

As a second ground for relief, Petitioner contends that the Commonwealth failed to meet its burden of proving the elements of third degree murder and states as follows:

> Third degree murder contains no kind of intent to kill, nor is it committed during a felony. It's a killing with malice, but it's the opposite of first and second degree murder. It's not possible for the commonwealth to have presented evidence of third degree since they pushed for and presented evidence to support first and second degree murder.

Doc. No. 1 at 7.

The record in this case clearly establishes that the trial court charged the jury with the law for first, second and third degree murder as well as voluntary manslaughter and advised the jury that it could find Petitioner guilty or not guilty of any of those offenses. The fact that the

prosecution sought a conviction of first or second degree murder did not preclude a finding of third degree murder and in no way suggests that the evidence did not support the conviction.

> The trial court gave the following jury instruction regarding third degree murder:
>
> For third degree murder, it is not necessary that the Commonwealth establish a specific intent to kill or even a specific intent to harm Mr. Benton, rather, the Commonwealth need only establish that Mr. Benton's death was brought about by an intentional act on the part of Mr. Carter that indicated a conscious disregard of an unjustified and extremely high risk that his actions might cause death or serious bodily harm to Mr. Benton…

N.T. 9/21/07 at 69-70.

> Additionally, the trial court elaborated as follows:
>
> Murder requires malice. Voluntary manslaughter does not. First degree murder requires a specific intent to kill. The killing must be willful, deliberate and premeditated. Second degree murder is any murder in the commission of a felony. In this case, the alleged attempted robbery. Third degree murder is any murder other than first or second degree. Voluntary manslaughter is basically an intentional killing for which malice is not proven because the defendant acted either under a sudden and intense passion resulting from a serious provocation or under a unreasonable mistaken belief that he was acting in justifiable self-defense.

Id. at 73-74.

Finally, in response to a question by the jury, the trial court provided the following explanation:

> Murder one, and by the way, all of these there is of course the elements that the victim must have died and that the defendant must be the direct cause of his death. What distinguishes murder one is that there must have been a specific intent to kill with malice. A person has the specific intent to kill if he has a fully formed intent to kill and is conscious of his intention.
>
> In stating this another way, a killing is with specific intent if it is willful, deliberate and premeditated. Please note a specific intent to kill, including premeditation, does not require any long term planning or previous thought for any particular length of time. Under the law, it can occur quickly in a fraction of a second. All that is necessary is that there be enough time so that the defendant can and does fully form an intent to kill and is conscious of that intention. That's the distinctive characteristic of first degree murder.

> Third degree murder is a killing with malice that is not first or second degree murder, so let's look at the definition of malice, which I gave you before. There are three types of malice, three different mental states that under the law are considered malice. One is if the killer acts with an intention to kill. Another is if he acts with an intent to inflict serious bodily harm, and third, if he acts with a conscious disregard of an unjustified and extremely high risk that his actions might cause death or serious bodily harm. *If any one of those three elements is present, there is malice and third degree murder,* **unless you find first or second degree.**

Id. at 84-85 (emphasis added).

The court's jury instruction, read in its entirety, makes clear that no error was committed. The trial judge did not state that a finding of an intent to kill was a prerequisite for returning a third degree murder guilty verdict, but rather correctly advised the jury that third degree murder requires a finding of malice, as does first and second degree murder. See Commonwealth v. Commander, 260 A.2d 773, 776 (Pa. 1970) ("Malice express or implied is the criteria and absolutely essential ingredient of murder."). When the trial judge explained the three mental states that may constitute malice, he reiterated that if one of those elements was present, the jury could find Carter guilty of third degree murder, unless it found Carter guilty of first or second degree murder. This is wholly consistent with the Pennsylvania statute that defines the degrees of murder. 18 Pa. Cons. Stat. § 2502 (providing that third degree murder is murder that is not first or second degree).

Even assuming arguendo that the jury instruction was misleading and caused the jury to believe that for an intentional killing, Petitioner could be guilty of third degree murder rather than first degree murder, this alleged error clearly did not prejudice Carter. Carter cannot establish that but for counsel's alleged error of failing to object to the jury instruction, the outcome of the trial would have been different. In fact, if Carter is correct that the instruction misled the jury and it actually found that he acted with malice and intent to kill, it would mean

that had the jury been properly instructed, he would have been convicted of first degree murder instead of third degree murder. See 18 Pa. Cons. Stat. § 2502(a).[6]

Carter reasons that if the jury knew that a finding of an intent to kill was not required to convict him of third degree murder, it would have instead found him guilty of voluntary manslaughter. This contention is illogical and meritless. As previously stated, the trial court properly charged the jury with the law for first, second, and third degree murder as well as voluntary manslaughter.

Further, Carter erroneously concludes that if the Commonwealth failed to prove the absence of specific intent, his conviction of third degree murder was not supported by the evidence. See Commonwealth v. Fisher, 80 A.3d 1186, 1191-92 (Pa. 2013) (finding that "absence of specific intent to kill is not an element of third degree murder; rather, such crime is an intentional act, characterized by malice, that results in death, intended or not"). The Pennsylvania Supreme Court has held that while "the intent to kill is a defined element of first degree murder—this does not mean an element of third degree murder is the polar opposite of intent to kill, such that the Commonwealth must prove a lack of intent to kill to convict of third degree murder. The Commonwealth has no such obligation; evidence of intent to kill is simply irrelevant to third degree murder. The elements of third degree murder absolutely include an intentional *act,* but not an act defined by the statute as intentional murder." Id.

---

[6] Carter, himself, acknowledges that the evidence at trial supported a finding of an intentional killing. In his petition, Carter unequivocally states: "The victim was stabbed once through the heart, neck, stomach and two of those crimes contain an intent to kill, coupled with the evidence presented, highly suggests that the jury was thinking intentional killing." Doc. No. 1-1 at 5. See also Commonwealth v. McCullum, 602 A.2d 313, 323 (Pa. 1992) (noting that fatal use of a deadly weapon against a vital part of another's body warrants an inference that the act was done with malice and a specific intent to take life and, therefore, justifies a verdict of guilty of murder of the first degree).

Thus, Carter cannot establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" Strickland, 466 U.S. at 694. Additionally, Carter cannot demonstrate prejudice as required under the second prong of the Strickland test. Id. Since Carter's underlying ineffective assistance of counsel claim lacks merit, the procedural default cannot be excused under Martinez. See Martinez, 132 S. Ct. at 1318.

### III. CONCLUSION

Rather than staying this case pending exhaustion, Carter's petition should be denied as all of his claims are procedurally defaulted and plainly lack merit. Accordingly, I make the following:

### R E C O M M E N D A T I O N

AND NOW, this 25th day of November, 2014, IT IS RESPECTFULLY RECOMMENDED that the petition for writ of habeas corpus be DENIED. There is no basis for the issuance of a certificate of appealabilty. The petitioner may file objections to this Report and Recommendation. See Local Civ. Rule 72.1. Failure to file timely objections may constitute a waiver of any appellate rights.

/s/ Marilyn Heffley
_____
MARILYN HEFFLEY
UNITED STATES MAGISTRATE JUDGE